The State v. Lawrence, et al. 















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-204-CV
&
No. 10-94-205-CV

     THE STATE OF TEXAS,
                                                                                              Appellant
     v.

     H. B. LAWRENCE, ET AL.,
                                                                                              Appellees
 

From the County Court
Ellis County, Texas
Trial Court Nos. C-2763 & C-2766
                                                                                                    

MEMORANDUM OPINION
                                                                                                    

      These are companion condemnation cases in which the State acquired a "stratified subsurface
fee estate" from two parcels of land, a subdivision tract and a residence, owned by H. B.
Lawrence and his wife (collectively, Lawrence). The jury awarded Lawrence $142,889 and
$129,235 as the value of the land condemned and damages to the remainder of each parcel,
respectively. The State appealed.
      By order dated November 15, 1995, we notified the parties that the dispute in these causes
was appropriate for resolution by an alternative dispute resolution procedure. Tex. Civ. Prac.
& Rem. Code Ann. § 154.021(a) (Vernon Supp. 1996). Although the State objected to our
actions, we found that its objections did not have a reasonable basis, other than general objections
to ADR, and, on December 20, referred the causes for mediation. Id. §§ 154.022(b), 154.023. 
The parties agreed on former Chief Justice Clarence Guittard as the impartial third party to be
named. 
      Judge Guittard conducted the mediation session on January 16, 1996. The attempt to settle
the dispute was successful and the parties filed a "Motion To Implement Settlement" on January
25. However, we were unable to determine with sufficient specificity the actions that the parties
requested we take to implement their agreement. Therefore, we remanded these causes to the trial
court for proceedings consistent with the agreement.
      Apparently, the parties have fulfilled the terms of their agreement because they have filed a
joint motion to dismiss. Attached to the joint motion to dismiss is a copy of the agreement and
a release of the judgments acknowledging payment of $210,000 by the State in satisfaction of the
judgments.
      In the relevant portion, Rule 59(a) provides:
(1) The appellate court may finally dispose of an appeal or writ of error as follows:
(A) In accordance with an agreement signed by all parties or their attorneys and
filed with the clerk; or
(B) On motion of appellant to dismiss the appeal or affirm the judgment
appealed from, with notice to all other parties; provided, that no other party
shall be prevented from seeking any appellate relief it would otherwise be
entitled to. 
Tex. R. App. P. 59(a).
      Both the State and Lawrence are party to the motion to dismiss. Thus, the motion is granted. 
They also ask that we issue an order returning the original exhibits to the trial court. This motion
is also granted.
      Therefore, we direct the clerk of this court to return to the County Court at Law of Ellis
County each of the original exhibits forwarded to this Court in connection with these appeals. 
Pursuant to the parties' agreement, the clerk of the County Court shall allow the parties to
withdraw their exhibits upon written receipt. This appeal is dismissed with the State to bear the
costs, in accordance with the parties' motion.


                                                                                 PER CURIAM
Before Justice Cummings, and
          Justice Vance
Dismissed on joint motion of the parties
Opinion delivered and filed March 13, 1996
Do not publish



rland v. State, 845 S.W.2d 824, 830 (Tex. Crim. App. 1992); Matson v. State,
819 S.W.2d 839, 847 (Tex. Crim. App. 1991). If, however, evidence at trial shows what
mechanism was used to inflict the damage, an issue is raised with respect to whether the grand jury
had information, when it handed down the indictment, as to the mechanism used. Id. Only in such
a case, must the State prove that the grand jury did not know the manner or means used to inflict
the damage and that the grand jury used due diligence in its attempts to ascertain the manner or
means. McFarland, 845 S.W.2d at 830; Matson, 819 S.W.2d at 847.
      During the trial, no evidence demonstrated the mechanism that Williams used to ignite the fire. 
Some testimony was elicited about the possibility of using a cigarette butt to start the fire. 
However, no witness ever testified that a cigarette butt or any other mechanism definitely ignited
the fire. Because the evidence is inconclusive as to the instrumentality that was responsible for the
starting of this arson fire, the State need not prove that the grand jury used due diligence in
attempting to ascertain the ignition source. Hicks, 860 S.W.2d at 425. Therefore, we overrule
Williams’ first point.
      Williams’ fourth point contends that the “State injected new facts into closing argument
concerning the failure of the grand jury to find the manner and means that the fire began.” To
constitute a proper jury argument, the argument must entail one or more of the following: (1)
summation of the evidence presented at trial; (2) reasonable deduction drawn from that evidence;
(3) answer to the opposing counsel’s argument; or (4) a plea for law enforcement. Cantu v. State,
939 S.W.2d 627, 633 (Tex. Crim. App. 1997); Bryant v. State, 923 S.W.2d 199, 211 (Tex.
App.—Waco 1996, pet. ref’d). Counsel is allowed wide latitude in drawing inferences from the
evidence so long as the inferences drawn are reasonable and offered in good faith. Cantu, 939
S.W.2d at 633. Conversely, jury argument must be extreme or manifestly improper, or inject new
and harmful facts into evidence to constitute reversible error. Id.; Bryant, 923 S.W.2d at 211. In
deciding whether a jury argument is extreme or manifestly improper, we look at the entire record
of final arguments to determine if the State made a willful or calculated effort to deprive the
defendant of a fair and impartial trial. Cantu, 939 S.W.2d at 633.
      During closing argument, the prosecutor stated the grand jury could not determine the manner
and means of the fire’s ignition because the fire completely gutted the building. This statement
merely summarized the evidence as the record is replete with statements that the building was
totally destroyed by the fire. Also, pictures introduced into evidence demonstrate the extensive
damage the fire caused. From these photographs and other evidence, it is fair to say that the
prosecutor made a reasonable inference that the grand jury could not determine the manner and
means of this fire’s ignition because of its devastating effect. Furthermore, during defense
counsel’s closing argument, he claimed the State offered no evidence that the grand jury did not
know the manner and means of the fire origination. Thus, the prosecutor’s statement simply
answered the argument espoused by opposing counsel. After reviewing the entire record of closing
arguments, we cannot say that the prosecutor made this argument in an effort to deprive Williams
of a fair and impartial trial. Id. We overrule the fourth point.
      In his second and third points, Williams complains that the evidence is legally and factually
insufficient to prove he used gasoline to start the fire. Williams draws a distinction between
accelerating the fire with gasoline and igniting the fire with items such as matches, cigarette
lighters, cigarette butts, blow torches, or flint rock. Taylor v. State, 735 S.W.2d 930, 943 (Tex.
App.—Dallas 1987), rev’d on other grounds, No. 1184-87 (Tex. Crim. App. 1988) (unpublished). 
We agree that gasoline may be used to accelerate a fire as opposed to igniting a fire. Id. at 945. 
However, the indictment in this case alleged in the alternative that Williams started a fire “by
lighting gasoline on the premises.” The indictment does not allege the mechanism with which
Williams used to ignite the accelerant gasoline. Thus, we read the indictment to allege in the
alternative that Williams used some unknown mechanism to ignite a fire that was accelerated by
gasoline.
      The State elicited the testimony of Terry Bronough, who testified that Williams told him that
he “poured gasoline around the place” and lit it. Additionally, the firemen and expert witnesses
indicated that they believed some type of accelerant was used in this fire. After reviewing the
evidence in the light most favorable to the verdict, we find that any rational trier of fact could have
found beyond a reasonable doubt that Williams somehow lit gasoline to accelerate this fire. Moore
v. State, 935 S.W.2d 124, 126 (Tex. Crim. App. 1996); Bryant, 923 S.W.2d at 206. Furthermore,
even without viewing the evidence in the light most favorable prism, the verdict is not so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). Williams’ second and third points are overruled.
      Williams complains in his fifth point that the trial court erred in allowing proof of extraneous
offenses. Also, he alleges in his sixth point that the trial court erred in admitting the extraneous
offenses because they were more prejudicial than probative. These extraneous offenses regarded
several burglaries which occurred at the Oriental Rug Co. prior to this arson. In those burglaries,
the thief gained entrance to the building through the skylight near where the fire started. 
Bronough’s testimony linked Williams to these burglaries because Williams told Bronough that he
entered the building to set the fire “through his usual criminal passage.” Williams claims the
admission of this evidence may have tempted the jury to find him guilty for acts (i.e., the prior
burglaries) other than the arson.
      A defendant may not be tried for a collateral crime or for being a criminal generally. DeLeon
v. State, 937 S.W.2d 129, 134 (Tex. App.—Waco 1996, pet. ref’d). Thus, Rule 404(b) prohibits
the admission of evidence of extraneous offenses committed by the defendant for the purpose of
proving the character of the defendant in order to show that he acted in conformity with that
character on the occasion in question. TEX. R. CRIM. EVID. 404(b); Santellan v. State, 939
S.W.2d 155, 168 (Tex. Crim. App. 1997). The rule also provides exceptions to this principle,
when evidence is admitted to show proof of motive, opportunity, intent, preparation, plan,
knowledge, identity, or absence of mistake or accident. Id. When the State attempts to introduce
evidence of other crimes, wrongs, or acts, the defendant must object in a timely fashion to preserve
his complaint for appeal. DeLeon, 937 S.W.2d at 134. After objection, the State must satisfy the
trial court that the other crime, wrong, or act has relevance apart from its tendency to prove the
defendant’s character to show that he acted in conformity therewith.


 Santellan, 939 S.W.2d at
168; DeLeon, 937 S.W.2d at 134. If the court decides that the evidence has no relevance apart
from character conformity, then it is inadmissible. Id.
      Nevertheless, the State may persuade the court that the evidence has relevance apart from
character conformity, i.e., that “other purposes” such as those declared in Rule 404(b) will be
served by its admission. Id. The relevance may be that the evidence tends to establish some
elemental fact, such as identity or intent; that it tends to establish some evidentiary facts, such as
motive, knowledge, opportunity, or preparation, leading inferentially to an element fact; or that it
rebuts a defensive theory. Id. As long as the trial court’s ruling was within the zone of reasonable
disagreement, there is no abuse of discretion and the court’s ruling will be upheld. Santellan, 939
S.W.2d at 169.
      Williams made a timely 404(b) objection to the introduction of the evidence linking him to the
prior burglaries. Therefore, the burden then fell on the State to persuade the trial court that the
evidence was admissible for an other purpose under Rule 404(b). We believe Bronough’s
testimony about Williams’ prior covert entries into the Oriental Rug Co. building demonstrate that
Williams possessed both the knowledge and the opportunity to set this fire. When the firemen
arrived at this fire, all the doors and windows in the building were locked. Fire investigators
consider locked entrances to be a factor favoring a determination that the fire started accidently. 
Thus, Bronough’s testimony linking Williams with an ability to enter the Oriental Rug Co.’s
building with all the entrances locked established a key evidentiary fact in this case. Santellan, 939
S.W.2d at 168; DeLeon, 937 S.W.2d at 134. We find no abuse of discretion in the court’s ruling
to admit this evidence. Santellan, 939 S.W.2d at 169.
      Because Williams made a proper Rule 403 objection, the trial court was obligated to weigh the
probative and prejudicial value of the evidence. Id. at 169. The court weighs the probative value
of the evidence to see if it is substantially outweighed by its potential for unfair prejudice,
confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative
evidence. TEX. R. CRIM. EVID. 403; Santellan, 939 S.W.2d at 169. The court engages in this
balancing process while keeping in mind the presumption that relevant evidence is more probative
than prejudicial. Santellan, 939 S.W.2d at 169. Factors that may be used in this balancing process
include: (1) the inherent probative value of the evidence; (2) the similarity of the conduct to the
offense on trial; (3) the strength of the evidence of the extraneous conduct; (4) the nature of the
extraneous conduct and its potential for impressing the jury in irrational, but indelible ways; (5)
the trial time necessary to develop the evidence, giving consideration to whether the jury’s attention
will be diverted from the offense on trial; and (6) the State’s “need” for the evidence including (a)
the availability of other evidence which tends to accomplish the same other purpose, (b) the
strength of the other evidence, and (c) whether the purpose served by the admission of the
extraneous conduct relates to an issue that is in dispute. DeLeon, 937 S.W.2d at 136.
      Under the first factor, the extraneous offense evidence linking Williams to the prior burglaries
is inherently probative because it provides proof that Williams had the knowledge and opportunity
to gain access to that part of the building where the fire started. Second, the prior burglaries and
the arson in this case are not similar. Third, the evidence is strong because a normal person would
not indicate he had a “usual criminal passage” unless he does. Fourth, the nature of the prior
burglaries is not so egregious that it would sway the average juror into acting in an irrational way. 
Fifth, very little time was needed for the State to elicit the evidence linking Williams to the prior
burglaries. Sixth, the State had a very strong need for this evidence because it carried the heavy
burden of proving that Williams set fire to a building which had all its doors and windows locked. 
Although the State mentioned several times that prior burglaries occurred by persons gaining access
to the Oriental Rug Co. building through the skylight, Bronough’s testimony was the only one
linking Williams with those prior burglaries. Because all of the factors weigh towards admitting
the evidence of Williams’ connection to the prior burglaries, the trial court did not abuse its
discretion in admitting this evidence. Id. Williams’ fifth and sixth points are overruled.
      We affirm the judgment.
 
 
                                                                         REX D. DAVIS
                                                                         Chief Justice
 
Before Chief Justice Davis,
      Justice Cummings, and
      Justice Vance
Affirmed
Opinion delivered and filed on July 16, 1997.
Publish